IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

**June 24, 1999**

Cecil Crowson, Jr.
**Appellate Court
Clerk**

ENGLEWOOD CITIZENS FOR       ) McMINN COUNTY
ALTERNATE B, et al.          ) 03A01-9803-CH-00098
                             )
    Plaintiffs-Appellants    )
                             )
                             ) HON. EARL H. HENLEY,
    v.                       ) CHANCELLOR
                             )
                             )
THE TOWN OF ENGLEWOOD, et al. ) AFFIRMED IN PART;
                             ) REVERSED IN PART;
    Defendants-Appellees     ) and REMANDED


JOHN W. CLEVELAND OF SWEETWATER FOR APPELLANTS

JON G. ROACH OF KNOXVILLE FOR APPELLEES


O P I N I O N


Goddard, P.J.


The Englewood Citizens for Alternate B appeal the decision of the McMinn County Chancery Court to dismiss their complaint against the Town of Englewood, it's mayor, Ed Simpson, and three of its commissioners, Amos Brock, Robert Middleton, and Elizabeth Raper. The Englewood Citizens group sought to challenge the town commission's selection of a route for a highway construction project.

At a special meeting on December 12, 1996, the Board of Commissioners for the Town of Englewood agreed to endorse Alternate A in a letter that would be sent by the commissioners to the Tennessee Department of Transportation. The town commission chose the existing route through Englewood for a construction project to widen U.S. 411 from a two lane road into a four lane road. A second choice for the improvement of U.S. 411 is a route which would bypass the town completely; this route is known as Alternate B, and is proposed as the better route by the Englewood Citizens for Alternate B.

Two votes were taken on the motion to send the letter endorsing Alternate A. Because Commissioners Raper and Middleton own property along Alternate A, the mayor believed their ownership could cause a conflict of interest for the commissioners if they were to receive money from the state for their property in order to improve U.S. 411. In both votes, the commission approved Alternate A with Commissioners Raper and Middleton abstaining in the second vote.

After the vote, the Englewood Citizens group filed suit against the town and its commissioners for declaratory and injunctive relief contending: 1) the town violated the Tennessee Open Meetings Act with its December 12, 1996, meeting; 2) the mayor and certain town commissioners have an impermissible conflict of interest in the selection of the route for a state highway; and 3) the selection of that route by the town

commissioners was arbitrary, capricious, and against the public interest.

On December 29, 1997, the Chancery Court dismissed the Englewood Citizens' first cause of action with respect to the violation of the Tennessee Open Meetings Act. The Englewood Citizens group claimed that the notice given by the mayor and the commissioners was inadequate, and, therefore, in violation of T.C.A. 8-44-103. The Chancellor thought differently, ruling that the notice provided by the town was reasonable under the circumstances.

The town recorder testified at trial that notice for the Thursday, December 12, meeting was posted on Tuesday, December 10, at the local post office, city hall, and Valley Bank. Additionally, the city recorder stated that she faxed a copy of the notice to the Daily Post Athenian newspaper for publication. Nothing in the record, however, indicates that the notice actually ran in the paper.

The Chancery Court dismissed the Englewood Citizens' second and third causes of action on February 5, 1998. The Court ruled that there was not a conflict of interest sufficient enough to keep the commission from making its determination. As for the third cause of action, the Chancery Court felt it was without authority to challenge the town commission's act because it was a legislative process. As the Court stated: "That's - although I

3

have no authority whatsoever in saying which is the best route to take.  That's for the city commission to make for themselves. That's a governmental process that a court doesn't - a legislative process that a court cannot interfere with." Nevertheless, the Chancery Court went on to find that the selection of the existing route for the improvements was reasonable because that is where the road is now located.

The Englewood Citizens group filed their notice of appeal on February 26, 1998,  raising three issues on appeal:

1) whether the Town of Englewood, its mayor and commissioners violated and continue to violate the open meetings law by refusing to give adequate public notice of their meetings;

2) whether the Town of Englewood, its mayor and commissioners violated the conflict of interest statutes, T.C.A. 6-54-107(b) and 12-4-101(b) by their interest in real property indirectly involved in contracts necessary to their official action; and

3) whether the Chancellor erred in dismissing the third count of the appellants' complaint without providing appellants an opportunity to be heard.

The Town of Englewood added two issues of its own for this appeal:

1) whether the plaintiff has standing to bring an action under or pursuant to T.C.A. 6-54-107 or T.C.A. 12-4-101; and

2) whether there exists a justiciable controversy entitling plaintiffs to seek relief pursuant to the declaratory judgment act T.C.A. 29-14-101 et seq.

I.   Open Meetings Act

The Englewood Citizens group contends that the notice given by the Town of Englewood for the December 12, 1996, meeting was inadequate and in violation of the Tennessee Open Meetings

4

Act.  The Open Meetings Act is commonly referred to as the

Sunshine Law and codifies the General Assembly's belief that

public business should not be conducted in secret. T.C.A.

8-44-101.


This appeal relies on one specific section of the act

that reads:

> NOTICE OF SPECIAL MEETINGS.  Any such governmental
> body which holds a meeting not previously scheduled by
> statute, ordinance, or resolution, or for which notice
> is not already provided by law, shall give adequate
> public notice of such meeting.

T.C.A. 8-44-103(b).  While this section clearly requires adequate

notice, the General Assembly did not provide a definition of what

adequate notice means.  The Supreme Court, however, has addressed

this issue in Memphis Publ'g Co. v. City of Memphis, 513 S.W.2d

511 (Tenn.1974).  In that case, the Court wrote:

> We think it is impossible to formulate a general rule
> in regard to what the phrase "adequate public notice"
> means.  However, we agree with the Chancellor that
> adequate public notice means adequate public notice
> under the circumstances, or such notice based on the
> totality of the circumstances as would fairly inform
> the public.

Memphis Publ'g Co., 513 S.W.2d at 513; see also Kinser v. Town of

Oliver Springs, 880 S.W.2d 681 (Tenn.Ct.App.1994).  Our task,

therefore, is to determine if the notice provided by the Town of

Englewood fairly informed the public under the totality of the

circumstances.


In order to qualify as adequate public notice under

T.C.A. 8-44-103(b), this Court finds that the notice given by the

Town of Englewood must satisfy a three-prong test.  First, the notice must be posted in a location where a member of the community could become aware of such notice.  Second, the contents of the notice must reasonably describe the purpose of the meeting or the action proposed to be taken.  And, third, the notice must be posted at a time sufficiently in advance of the actual meeting in order to give citizens both an opportunity to become aware of and to attend the meeting.  Without meeting all three of these requirements, we fail to see how the Town of Englewood could provide adequate public notice for the purposes of a special meeting.[1]

1.   Posting Location

        The proof in the record shows that the Town of Englewood posted notice of the meeting in three locations: city hall, the post office, and Valley Bank.  Under the circumstances presented in this case, we find that these three locations were adequate under the totality of the circumstances because they afforded the members of the community an opportunity to see the notice.

        The Englewood Citizen's group complains in their brief that the notice is inadequate because it is not conspicuous, and the three public locations chosen are not accessible at all hours

---

[1]     Our determination of adequate public notice is given only in respect to T.C.A. 8-44-103(b) for special meetings under the Sunshine Act and not for regularly scheduled meetings under T.C.A. 8-44-103(a).

over the weekend.  Additionally, they argue that several community members were unaware of the posted notices.  We find, however, that for purposes of this prong of the adequate notice inquiry, the town can provide adequate notice simply by choosing reasonable public locations and posting notices at those public locations on a consistent basis.  It would be illogical to find that city hall and the post office were not proper locations to post notice regarding town business.  The Citizens group must not forget the practical point that notice must be posted somewhere.

2.    Contents of the Notice

In order for the notice given by the town to meet the second prong of the adequate notice inquiry, the contents of the notice must reasonably describe the purpose of the meeting or the action proposed to be taken.  In this instance, the contents of the Town of Englewood's notice read:

1.    Letter to State concerning HWY 411
2.    Police Salary Supplement pay
3.    City Recorder.

We find that under the circumstances presented the content of this notice was so lacking that a person of reasonable intelligence would not adequately be informed by the cryptic statement "Letter to State concerning HWY 411."  Instead, a more substantive pronouncement stating that the commission would reconsider which alternative to endorse for Highway 411 should have been given.

7

We are not the first appellate court in this state to address the issue of the content of the notice given. The Western Section of this Court was faced with a claim of inadequate notice under the Sunshine Act brought against the Paris Special School District. <u>Neese v. Paris Special Sch. Dist.</u>, 813 S.W.2d 432 (Tenn.Ct.App.1990). The facts of that case dealt with the PSSD adopting a plan of clustering an entire grade for three school districts into one school. There was intense public controversy over whether or not to accept the plan. A special meeting was held in order for the PSSD to deliberate the issue of clustering, but the public notice given for the meeting failed to mention that clustering would be discussed extensively. In ruling on the issue, the Court wrote:

> We believe, however, that under these circumstances, the public had a right to be informed that the issue of clustering would be extensively discussed at the Ken-Lake meeting. If the major issues discussed at the meeting were actually those stated in the newspaper article quoted above, perhaps there would be no interest in traveling to Kentucky for a two-day meeting. On the other hand, if the general public was aware that the major issue was not as reported in the newspaper, but rather was the issue of clustering, there would likely be more interest in attending. Certainly "adequate public notice under the circumstances" is not met by [a] misleading notice.

<u>Neese</u>, 813 S.W.2d at 435-36.

We agree with the Western Section that the general public must be made aware of the issues to be deliberated at the special meeting through notice designed to inform the public about those issues. The notice given by the Town of Englewood is inadequate under the circumstances because it does not reasonably

8

describe the purpose of the meeting or the action to be taken with respect to the letter to the state.  The notice is bereft of any explanation of what that letter would consist of or the fact that the town commissioners had decided to reconsider the issue of Highway 411's path.  A misleading notice is not adequate public notice under these circumstances.  See Neese, 813 S.W.2d at 436.  We hold that with respect to the content of the notice provided by the town, adequate notice was not provided to the community members of Englewood.

3.    Time of the Posting.

In order to meet the third prong of the adequate public notice inquiry, the notice must be posted at a time sufficiently in advance of the actual meeting in order to give citizens both an opportunity to become aware of and to attend the meeting.  Notice which is not posted sufficiently in advance of the special meeting is nothing more than a mere gesture.  Notice that is a mere gesture is no notice at all.  U.S. Life Title Ins. Co. v. Department of Commerce and Ins., 770 S.W.2d 537, 541 (Tenn.Ct.App.1988).

The Town of Englewood contends that two days advance posting is all that is required to meet the adequate notice requirement of T.C.A. 8-44-103(b).  The town urges this Court to believe that it is reasonable under the circumstances to limit notice for special meetings to two days because the legislature has not defined how many days constitute adequate notice.  As the

9

town argues in its brief: the "General Assembly must be presumed to be satisfied with the flexible provision of 'adequate public notice.'"

Certainly, some flexibility is inherent in a statute written in as general a fashion as the one before this Court. Yet, flexibility is not the standard of review for deciding this issue. Instead, it is the pronouncement of the Supreme Court that adequate public notice must be based on the totality of the circumstances as would fairly inform the public. Memphis Publ'g Co., 513 S.W.2d at 513. We fail to see how two days notice is sufficient enough to fairly inform the public under these circumstances.

Based on the inadequate content of the notice provided and the lack of a sufficient time for the posting to be observed by the community members, we hold, therefore, that the Town of Englewood did not provide adequate public notice pursuant to T.C.A. 8-44-103(b). The December 12, 1996, meeting was in violation of the Sunshine Act of this State and any action taken by the town commission at that meeting was invalid.

II.  Conflict of Interest

The second issue raised by the Englewood Citizens group is whether the Town of Englewood, its mayor, and commissioners violated the conflict of interest statutes, T.C.A. 6-54-107(b) and 12-4-101(b) by their interest in real property indirectly

10

involved in contracts necessary to their official action.  In order to resolve this issue, we will assume that the Englewood Citizens group does have standing to bring an action under or pursuant to T.C.A. 6-54-107(b) or T.C.A. 12-4-101(b).[2]

The General Assembly crafted both conflict of interest statutes very carefully by choosing specific language to describe an impermissible conflict of interest.  Tennessee Code Annotated 6-54-107(b) reads:

> No officer in a municipality shall be indirectly
> interested in any contract to which the municipality is
> a party unless the officer publicly acknowledges such
> officer's interest.  "Indirectly interested" means any
> contract in which the officer is interested but not
> directly so, but includes contracts where the officer
> is directly interested but is the sole supplier of
> goods or services in a municipality.

A conflict of interest pursuant to T.C.A. 6-54-107(b) only arises under the statute when a contract is at hand.  The contract interest need not be direct, but the commissioner or municipal officer must at least have an indirect interest in some contract between the municipality and another person or entity.

Likewise, T.C.A. 12-4-101(b) also requires the city official to be at least indirectly interested in some contract between the municipality and another.  The statute reads:

---

[2]     The Town of Englewood argues that the Englewood Citizens group lacks standing; however, because we find that no conflict of interest exists under either statute, we need not decide whether  the Englewood Citizen's group has standing.

It is unlawful for any officer, committeeperson, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend any work or any contract in which any municipal corporation, county, state, development district, utility district, human resource agency, or other political subdivision created by statute shall or may be interested, to be indirectly interested in any such contract unless the officer publicly acknowledges such officer's interest. "Indirectly interested" means any contract in which the officer is interested but not directly so, but includes contracts where the officer is directly interested but is the sole supplier of goods or services in a municipality or county.

Under the facts presented for our review, we do not find any evidence whatsoever that indicates there is a contract between the commissioners of the Town of Englewood, or an indirect interest in a contract between the commissioners and the Town of Englewood. See generally Town of Smyrna v. Ridley, 730 S.W.2d 318 (Tenn.1987).

The Englewood Citizens group argues that because Commissioners Raper and Middleton own property along Alternate A, they will indirectly benefit by the construction project. However true this may be, their benefit does not rise to the level of an indirect interest in a contract with the Town of Englewood. Both statutes specifically require a contract interest to exist in order for a conflict of interest to arise. We hold, therefore, that the Chancellor was correct in dismissing the Englewood Citizens group's conflict of interest claim because no contract interest is at stake in the selection of Alternate A for the highway construction project.

12

III.    Review of the Town's Decision

The Englewood Citizens' final issue for appeal is whether the Chancery Court erred by not allowing the group to go forward with its claim that the action of the town commissioners in selecting Alternate A was arbitrary, capricious, and against the public interest.  The Englewood Citizens group brought their third claim under the Declaratory Judgment Act, T.C.A. 29-14-101 et seq.  The Town of Englewood counters this third cause of action by noting that as a prerequisite for maintaining an action under the Declaratory Judgment Act, the Englewood Citizens group must show that a justiciable controversy exists.  Without a justiciable controversy, the town contends that the Chancery Court's decision to dismiss this cause of action should be upheld.

The Town of Englewood is correct to note that the Declaratory Judgment Act requires that a justiciable controversy must exist in order to pursue a claim under the act. Oldham v. ACLU, 910 S.W.2d 431, 433-34 (Tenn.Ct.App.1995).  Regardless of whether a justiciable interest exists, however, it is the accepted law in this state that a trial court within its discretion, may decline to issue a declaratory judgment. "Numerous cases have stated that the making or refusing of a declaratory judgment is discretionary with the trial court." Oldham, 910 S.W.2d at 435.  Additionally, "The action of the trial court in refusing a declaration will not be disturbed on appeal unless such refusal is arbitrary." Oldham, 910 S.W.2d at

435; citing Southern Fire & Cas. v. Cooper, 200 Tenn. 283, 292 S.W.2d 177 (1956).

On this third issue, we find that the Chancellor properly exercised his discretion by declining to issue a declaratory judgment on the matter at hand. The Chancellor's decision was not arbitrary and, in fact, showed extreme sensitivity to the decision making process that is entrusted to the town commission and its mayor. Based on our review of this record, we find that the Chancellor's decision was not arbitrary and as to this issue should be upheld.

IV. Conclusion

In conclusion, we hold that the December 12, 1996, special meeting of the Englewood Town Commissioners was in violation of the Sunshine Act of the State of Tennessee. The Chancellor's decision to dismiss that cause of action is reversed, and judgment is hereby entered in favor of the Englewood Citizens for Alternate B on their first cause of action. The second and third causes of action involving the alleged conflict of interest and the review of the town commission's decision were properly dismissed, and the Chancery Court's decision with respect to those two issues is affirmed.

The cause is remanded for such further action, if any, as may be necessary and collection of costs below which are, as

14

are costs of appeal, adjudged one-half against the Plaintiffs and one-half against the Defendants.

                                        _____
                                        Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.